Madden, Judge,
delivered the opinion of the court:
Plaintiff seeks to recover from the defendant $2,900, the amount the defendant assessed against plaintiff for liquidated damages for 29 days delay in the competion of work done by plaintiff for the defendant under a contract, and in addition, damages of $4,037.89 alleged to have been caused plaintiff by the defendant’s breach of contract.
The contract was for the building of six culverts, outlets from Lake Okeechobee in Florida, to control the level of water in the lake so that it would be adequate for navigation and not so high as to flood the surrounding land. The contract was entered into October 27, 1933, and plaintiff agreed to begin work within 10 days of receipt of notice to proceed and to complete the work within 240 days thereafter, except as the time might be extended. Notice to proceed was given on November 8, 1933.
Plaintiff had difficulties with his cofferdam on the No. 3 culvert. He started work there on March 19, 1934. The water at the location of this culvert and within the area of the cofferdam varied from zero to about six and one-half feet in depth, with an average depth of about five feet. Posts of 2 x 6 or 2 x 8 dimensions were driven into the mud and one inch board sheathing was attached to the posts to form the sides. The box so made was filled with the muck available nearby. When on April 16 the water was pumped out of the box, the box collapsed when the water level had been lowered about three feet. Attempts to repair were made, followed by successive failures until on June 11, rock having been placed in the cofferdam, it held so that the work could be completed.
Plaintiff claims that the reason for the difficulties at No. 3 culvert was that the defendant, in the specifications which *579 were a part of the contract, agreed that the level of the surface of the water at the site of this culvert would be 13.9 feet above sea level, unless it was raised or lowered by natural causes; that the surface was in fact 15.9 feet above sea level when plaintiff did his work; that this higher level was artificially maintained by the defendant through the exercise of controls over the escape of the water of the lake into an outlet canal; that if the water level had been as agreed upon, the average head of water to be withstood by the cofferdam would have been two and one-half feet instead of five feet; and that the dam as constructed would not have failed. Plaintiff bases his claim that the defendant agreed that the water level would be at 13.9 feet upon the following facts.
First: A drawing prepared by the defendant to accompany the specifications furnished to bidders showed the contour of the land and the location of the canal, the proposed levee, and the proposed No. 3 culvert. In the upper right hand corner of the map was a small drawing labeled “Profile Along Center Line of Proposed Location of Drainage Structure. Classification Determined by Probings.” The map showed the contour of the bottom of the lake at this location, the nature of the substance at and under the bottom as “Muck and Loose Rock,” “Sand and Muck,” and “Muck” at different points. The drawing showed a horizontal line near the top with the legend “Surface of Water Elev. 13.9.” The whole drawing was dated as “approved March 23, 1933,” by the defendant’s consulting engineer.
Second: On page 2 of the printed specifications, under the heading “Physical Data” appears the following language quoted in finding 15:
6. Physical data. — Lake Okeechobee itself is an inland fresh water lake approximately 730 square miles in area, centrally located in the lower peninsula of Florida, about 60 miles west of Palm Beach and 70 miles east of Fort Myers. The controlling depth from the Gulf of Mexico through the Caloosahatchee River and Canal is about 2y2 feet to Moore Haven at a .lake stage of 14.0 feet. From Moore Haven to the lake there is a controlling depth of 3 feet through the Moore Haven approach canal at lake stage of 14.0 feet. From the east coast the lake can be reached through the St. Lucie River and Canal with a controlling depth of 6 feet, but by *580 passes of the two locks limit the width of craft .to 50 feet and the length to 150 feet. All depths given above are based on lake elevation of 14.0 feet above mean low water, and are referred to Punta Kasa datum. There are seven towns near the sites of the work; they are Moore Haven, Clewiston, Lake Harbor, Belle Glade, South Bay, Pahokee, and Canal Point. Each is connected with the others by paved highways and has rail connections. Clewiston has connection with the lake by a channel 40 feet wide and a depth of 6 feet at lake elevation of 14.0 feet. Paved highways for motor or tractor hauling lead to and/or are adjacent to all culverts.
As to the second of these points, we see in it no basis for plaintiff’s claim that the defendant agreed to maintain a water level as low as 14 feet. It was a truthful statement as to what depth of water in various approaches to the lake might be expected for bringing in materials, for example when the water in the lake was at a 14-foot level.
We also think that the notation on the drawing showing the contour of the bottom of the lake and the type of soil which a contractor might expect to find there, and showing the surface of the water as 13.9 feet above sea level, did not amount to an agreement by the defendant that the water would be maintained at that depth. It was natural for the drawing to show the water level as it was when the soundings were made, as it was a scale drawing and unless it was to be left open at the top it would have to show the surface somewhere. Plaintiff testified that at the time he looked at the site in September or October 1933 before he made his bid he knew that the level of the water was about 17.5 feet. In those circumstances he had no reason to interpret the notation on the drawing of 13.9 feet as an agreement by the defendant to abandon its control of the level in the lake and permit it to recede to 13.9 feet.
Furthermore, plaintiff agreed in the contract to build his cofferdams so as to “provide protection to an elevation of plus 22.0” feet. He says that this agreement is immaterial to the issue here; that if he did not comply with that part of the agreement and if his cofferdam was overtopped by water, he would have to stand the loss himself, whereas if he did as he *581 agreed and built to a 22-foot height and still the water over-topped the dam, the defendant would compensate him. We think that the words and intent of the agreement are incompatible with plaintiff’s claim that the defendant should compensate him for the expense and excuse him for the delay caused by the. collapse of his cofferdam when the water level was only about 16 feet.
Even if the defendant had agreed to permit the water level to go down to 13.9 feet while plaintiff was doing his work, and had instead maintained it at 15.9 feet, we think plaintiff could not recover because he has not proved what part, if any, of his difficulties and expenses at Culvert No. 3 were caused by the additional two feet of depth. If the water level had been two feet lower, the average depth would have been about three feet, but the depth in some places would have been four and one half feet. Plaintiff’s cofferdam as constructed collapsed when the water level inside it was lowered three feet, hence it would have collapsed under the more than 3-foot head of water which it would have had to withstand at some places even if the level had been the lower one.
Plaintiff’s difficulties at Culvert No. 3 really resulted from the fact that the mud in the bottom of the lake was light and afforded little support to the studs which were driven into it; the rock ledge on which the mud rested was so hard that the wooden studding would not penetrate it at all; and steel sheeting which might have penetrated the rock would have been too expensive for the price that plaintiff bid on the job. As a consequence of these factors, plaintiff’s attempts were futile until he brought rock in barges to support the cofferdam.
We conclude, therefore, that the defendant is not responsible for the delay and expense incurred by plaintiff at Culvert No. 3.
We do not consider whether plaintiff was denied the right to a decision of the contracting officer on the question of an extension of time, since, in view of what we have said, the result would not be affected thereby. Neither do we consider what would be the effect of an admission by the defendant that no actual damage resulted from the delay in completing the work, since there is no such admission. We think *582 that the extension of time given plaintiff on account of the change order on Culvert No. 4r-A was adequate.
It follows that plaintiff’s petition must be dismissed.
It is so ordered.
Jones, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.
Whitaker, Judge, took no part in the decision of this case.